OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs and their oral arguments before this Court. Appellant, Danielle Bequeath, appeals the decision of the County Court No. 2, Mahoning County, Ohio denying her motion to suppress and finding her guilty of one count of operating a vehicle under the influence of alcohol in violation of R.C. 4511.19(A)(1). With this appeal, Bequeath challenges the results of a BAC test claiming that the State failed to substantially comply with Ohio Administrative Code Section 03705-53-04(A)(2) when it did not use a different bottle of testing solution to retest the BAC DataMaster machine after an initial invalid calibration result.
 {¶ 2} Because Bequeath was convicted of a per se violation of driving under the influence, accurate and reliable BAC test results are crucial to support such a conviction. We find that the State failed to substantially comply with the Administrative Code in maintaining the BAC DataMaster which produced the test result leading to the conviction in this case. We cannot say that the State's failure was harmless. Accordingly, we reverse the decision of the trial court, vacate Bequeath's conviction and remand this matter for further proceedings.
 {¶ 3} The facts in this case are largely undisputed. On October 2, 2005, a calibration was performed on the breath-testing machine used in Bequeath's case. The initial calibration resulted in a reading outside of the 0.005 margin of error permitted under OAC 3705-53-04(A)(2). Thereafter, instead of performing a second calibration with a different bottle of testing solution, the same bottle was used for a second calibration. The second reading was within the margin of error and thereafter the machine was put back into regular use without any form of service or maintenance performed.
 {¶ 4} On November 29, 2005, an Ohio State Highway Patrol Officer stopped Bequeath for an alleged marked lane violation. The stop resulted in Bequeath being charged with a violation of R.C. 4511.19 or OVI in addition to the marked lane violation. The aforementioned machine was used to test the blood alcohol content of Bequeath.
 {¶ 5} Bequeath initially pled not guilty to both counts. However, after the trial court denied her motion to suppress the results of her blood alcohol test, Bequeath *Page 2 
changed her plea to no contest to one count of operating a vehicle under the influence in violation of R.C. 4511.19(A)(1)(h). The trial court convicted her of the one count and dismissed the remaining charges. It is from this decision that Bequeath now appeals.
 {¶ 6} As her sole assignment of error, Bequeath states:
 {¶ 7} "The Trial Court erred when it denied Ms. Bequeath's Motion to Suppress for the reason that the State failed to substantially comply with Ohio Administrative Code Section 03705-53-04(A)(2) when it did not use a different bottle of testing solution to retest the BAC DataMaster machine after an initial invalid calibration result."
 {¶ 8} An appellate court's review of a motion to suppress involves mixed questions of law and fact. State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, at ¶ 8. We must accept the trial court's findings of fact as true if they are supported by competent and credible evidence. Id, citing State v. Fanning (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583. However, with respect to the trial court's findings of law, we must apply a de novo standard of review and decide, "whether the facts satisfy the applicable legal standard." Burnside, at ¶ 8, citingState v. McNamara (1997), 124 Ohio App.3d 706, 710, 707 N.E.2d 539.
 {¶ 9} Notably, in this case, Bequeath was charged with a per se violation of R.C.4511.19.
 {¶ 10} Per se offenses define "the point the legislature has determined an individual cannot drive without posing a substantial danger, not only to himself, but to others. * * * In determining whether one of the per se offenses was committed by the defendant, the trier of fact is not required to find that the defendant operated a vehicle while under the influence of alcohol or drugs, but only that the defendant operated within the state and that the defendant's chemical test reading was at the proscribed level. The critical issue * * * is the accuracy of the test, not the behavior of the accused." Newark v. Lucas (1988),40 Ohio St.3d 100, 103. Because the results of a blood alcohol test are clearly an element of the proof of the per se offenses, the results of such tests and their accuracy are crucial to a determination of guilt or innocence. Id.
 {¶ 11} Accordingly, before the results of a breathalyzer test can be admitted into evidence, the State must show it substantially complied with the methods approved by the *Page 3 
Ohio Director of Health as prescribed in the Ohio Administrative Code.State v. Plummer (1986), 22 Ohio St.3d 292, 490 N.E.2d 902; Defiance v.Kretz (1991), 60 Ohio St.3d 1, 573 N.E.2d 32. The substantial-compliance standard, however, will only excuse errors that are "de minimis" or "excusable" as minor infractions. State v. Mayl, 106 Ohio St.3d 207,833 N.E.2d 1216. To succeed in challenging the admissibility of a breathalyzer test, the defendant must be able to show that the state's failure to strictly comply with the regulations was prejudicial.State v. Monsour (Dec. 5, 1997), 11th Dist. No. 96-P-0274,1997 WL 772941. Absent a showing of prejudice to the defendant, substantial compliance will overcome a challenge on admissibility. Id. See, also,State v. McCardel (Sept. 28, 2001), 11th Dist. No. 2000-P-0092,2001 WL 1149182.
 {¶ 12} Here, Bequeath specifically contends that the State did not substantially comply with O.A.C. 3705-53-04(A)(2) which requires the senior operator to use a different bottle of calibration solution to confirm a check which registers outside the range set forth in O.A.C. 3701-53-04(A)(1). The relevant code section provides:
 {¶ 13} "An instrument shall be checked using an instrument check solution containing ethyl alcohol approved by the director of health. An instrument check result is valid when the result of the instrument check is at or within five one-thousandths (0.005) grams per two hundred ten liters of the target value for that instrument check solution. An instrument check result which is outside the range specified in this paragraph shall be confirmed by the senior operator using another bottle of approved instrument check solution. If this instrument check result is also out of range, the instrument shall not be used until the instrument is serviced." O.A.C. 3705-53-04(A)(2)
 {¶ 14} In the present case, Bequeath relies upon that same logic claiming that, because the officers used the same bottle of solution after an inaccurate reading was given, it would be impossible to tell if it was a bad batch of solution that was used or whether the machine was malfunctioning. Bequeath suggests that the latter is more probable given the small time frame between tests as it would be unlikely that there would have been any alterations made to the testing solution.
 {¶ 15} Bequeath further relies upon testimony given during a suppression hearing in the case of State of Ohio v. Stuckey, Mahoning County Court Number 4, Case No. *Page 4 
2006 TRC 1526. Because Stuckey was similarly convicted based on readings obtained from the same BAC Datamaster during the same time frame as Bequeath, the transcript of that hearing was entered as an exhibit at Bequeath's suppression hearing. Significantly, the contents were stipulated to by the State.
 {¶ 16} At that hearing, evidence was admitted regarding the report of Frank Nevesky, an employee of the Ohio Department of Health, who came to the Canfield Post on March 10, 2006 to review the records for the BAC Datamaster and to check the machine itself. Nevesky concluded that the October 2, 2005 calibration was performed improperly and that the machine should have been removed from service for maintenance due to the October 2, 2005 incident. Notably, the machine was then removed for service.
 {¶ 17} In further support that it was a malfunctioning machine and not a bad batch of solution that caused the inaccurate October 2, 2005 reading, Bequeath cites to a series of calibrations that resulted in readings outside of the permissible margin of error and occurred between the October 2, 2005 reading and the day the machine was taken out of service on March 10, 2006. Bequeath argues that a pattern was established where a specific bottle, which resulted in an acceptable reading, at a later date resulted in an unacceptable reading. Thereafter, a second calibration is performed with a new bottle, which results in an acceptable reading. This second bottle is then used at a later date and again results in an unacceptable reading. Bequeath argues that these series of events demonstrate that the failure to use a second bottle of solution on October 2, 2005 was not a de minimus violation.
 {¶ 18} The State's only argument in response is that once the machine tests compliant with a bottle of testing solution, according to the OAC, no further action is necessary. However, this fails to address Bequeath's main concern: that the machine gave off two different readings, only minutes apart, using the same batch solution. The State offers no explanation as to how a machine could give those two readings and still be functioning properly. The State also fails to explain why that same machine continued to produce inaccurate results up until it was taken out of service by an expert who had reviewed all of these results. The State merely argues that once a machine tests *Page 5 
compliant, it is prima facie functional.
 {¶ 19} We find Bequeath's argument to be more persuasive as did the Sixth District in State v. Garcia (Jan. 16, 1998), 6th Dist. No. F-97-020, a case with nearly identical facts to the case at hand. InGarcia, the Sixth District concluded that the trial court erred in denying the appellant's motion to suppress as the state failed to show that the operator substantially complied with the ODH regulations. The Sixth District reversed the appellant's conviction reasoning:
 {¶ 20} "When the Supreme Court of Ohio in State v. Plummer, supra, explained that there exists some `leeway' in the Department of Health Regulations with regard to alcohol testing, we do not believe they were thinking of a fact situation such as the one before us. It is clear that O.A.C. 3701-53-04(A)(2) requires the second calibration check to be done using a different bottle of solution to eliminate the possibility that the faulty reading was caused by contaminated solution rather than a malfunctioning DataMaster. * * * [A] n operator's failure to use a different bottle of solution following a calibration check outside the required range renders all subsequent checks suspect." Id. at 2.
 {¶ 21} We agree. After the BAC DataMaster in this case produced an inaccurate result, the operator was mandated under the Administrative Code to use a new bottle of batch solution so there would be no question as to whether it was the solution or the machine producing the inaccurate result. Because we conclude this failure to be prejudicial to Bequeath, the judgment of the trial court is reversed, Bequeath's conviction is vacated and this case is remanded to the trial court for further proceedings.
Donofrio, J., concurs.
 Vukovich, J., concurs. *Page 1